IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOHNNY D. LEE**                                                                                             **PLAINTIFF**

v.                             **Case No. 4:22-cv-00023-KGB**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration**                                                **DEFENDANT**

**ORDER**

Plaintiff Johnny D. Lee appeals the decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, to deny Mr. Lee's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Mr. Lee asks the Court to reverse the Commissioner's decision and allow his claim for benefits. Both parties have submitted briefs (Dkt. Nos. 9; 12). After considering the record, the arguments of the parties, and the applicable law, the Court affirms the Commissioner's decision.

**I.**     **Background**

Mr. Lee first applied for SSI in October 2014 (Dkt. No. 7-5, at 2). Mr. Lee alleged that his disability began on October 1, 2008, as a result of chronic back pain and a bulging disc (Dkt. No. 7-6, at 6). Mr. Lee's application was denied initially on February 11, 2015, and denied at the reconsideration level on May 18, 2015 (Dkt. No. 7-4, at 2-5, 9-11). After a hearing, an Administrative Law Judge ("ALJ") also denied Mr. Lee's claim on February 16, 2017 (Dkt. No. 7-3, at 47-60). The Appeals Council reviewed the ALJ's unfavorable decision and remanded the case back to the ALJ for further proceedings on April 27, 2017 (*Id*., at 65-68). Upon remand, the same ALJ held another hearing and issued his decision on March 14, 2018, again denying Mr.

Lee's claim for benefits (Dkt. No. 7-2, at 9-26). After the Appeals Council denied Mr. Lee's request for review, Mr. Lee filed his initial complaint in this Court (Dkt. No. 7-10, at 26-35).[1]

In Mr. Lee's first federal case, this Court, on April 15, 2019, granted the Commissioner's request to remand for further administrative proceedings (Dkt. No. 7-10, at 36). Before the remand, Mr. Lee filed a subsequent application for SSI in August 2018 (*Id.*, at 37-40). Upon remand from this Court, Mr. Lee's October 2014 application was consolidated with his second application (*Id.*). The Appeals Council also assigned the case to a new ALJ (*Id.*).

After conducting a hearing and holding the record open for Mr. Lee to provide the ALJ with additional evidence, the ALJ issued her decision on March 20, 2020, denying Mr. Lee's claim (Dkt. No. 7-9, at 9-26, 100-102). The Appeals Council denied review of Mr. Lee's written exceptions (*Id.*, at 2-6). The ALJ's decision issued on March 25, 2020, stands as the final decision of the Commissioner, and Mr. Lee has requested judicial review a second time.

## II.     The Commissioner's Decision

At step one, the ALJ found that Mr. Lee had not engaged in substantial gainful activity since October 16, 2014, the date of his application (Dkt. No. 7-9, at 14).[2] At step two, the ALJ found that Mr. Lee had the following severe impairments: "right tibia fracture with intramedullary rod, degenerative disc disease of the lumbar spine with mass abutting the nerve root with surgery

---

[1] *See Lee v. Berryhill*, Case No. 4:18-cv-453 (E.D. Ark. July 10, 2018).

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

in 2015, chronic obstructive pulmonary disease (COPD), borderline intellectual functioning and depression." (*Id.*, at 14-15). At step three, the ALJ determined that Mr. Lee's severe impairments did not meet or equal a listed impairment (*Id.*, at 15-17).

Before proceeding to step four, the ALJ determined that Mr. Lee had the residual functional capacity ("RFC") to perform light work with the following limitations: (1) he can occasionally use right foot controls; (2) he cannot be exposed to dust, fumes, other pulmonary irritants, extreme heat, or extreme cold; (3) he is limited to unskilled work with supervision that is simple, direct, and concrete; and (4) he can engage in social interaction that is incidental to the work performed but without contact with the general public (*Id.*, at 17-24).

Proceeding with step four, the ALJ found that Mr. Lee was unable to perform any of his past relevant work (*Id.*, at 25). At step five, however, the ALJ found, relying on the testimony of a vocational expert, that—based on Mr. Lee's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Mr. Lee could perform (*Id.*, at 25-26). Those jobs included routing clerk (DOT[3] 222687022, light, SVP[4] 2); deli cutter (DOT 316684014, light, SVP 2); and router (DOT 222587038, light, SVP 2) (*Id.*). Therefore, the ALJ found that Mr. Lee was not disabled within the meaning of the Social Security Act (*Id.*, at 26).

### III.   Discussion

#### A.   Standard Of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.

---

[3] "DOT" refers to Dictionary of Occupational Titles.

[4] "SVP" refers to Skill Level and Specific Vocational Preparation.

3

*Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g).  While substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion, substantial evidence on the record as a whole requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision.  Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (cleaned up).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained:  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . 'is more than a mere scintilla.'"  *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.*

It is not the task of this Court to review the evidence and make an independent decision.  *See Miller*, 784 F.3d at 477.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  *Id*.  The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ.  *Id.*

B.  **Mr. Lee's Arguments On Appeal**

Mr. Lee argues that the evidence supporting the ALJ's decision to deny benefits is less than substantial.  Mr. Lee alleges that the ALJ erred in failing to:  fully develop the record, adequately assess the credibility of his subjective complaints, and properly determine his RFC (Dkt. No. 9, at

4

9–21). Mr. Lee also asserts that it was error for the ALJ to use the vocational expert testimony (*Id.*, at 17–21).

1. **Administrative Record**

First, Mr. Lee contends that the ALJ was required to order a new consultative examination before assessing his RFC and that the failure to do so resulted in the ALJ failing to develop the record fully and fairly as it relates to both his mental and physical impairments (Dkt. No. 9, at 9–17). For support, Mr. Lee points to his pre-hearing request for a new consultative examination, conflicting intellectual quotient ("IQ") results, the ALJ's "erroneous" reliance upon the 2018 state agency's opinion evidence, the ALJ's "erroneous" rejection of the 2018 treating physician's opinion evidence, the lack of recent opinion evidence supporting the light RFC, and the ALJ's issuance of her decision before Mr. Lee acquired and submitted additional evidence into the record.[5] *Id.*

One of an ALJ's duties is to develop the administrative record in a hearing for social security benefits. *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). An ALJ, however, is not under any duty to seek additional information when the relevant issues are already developed by the record before the agency. *Id.* In other words, a claimant has received a "full and fair hearing" when "the ALJ's determination is based on all the evidence in the record, including medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Id.* (quoting *Halverson v. Astrue,* 600 F.3d 922, 933 (8th Cir. 2010)). "The ALJ is required to order medical examinations and tests only if the medical records presented to [her] do not give sufficient medical evidence to determine whether the claimant is disabled." *Id.*

---

[5] It appears as if Mr. Lee received the records that he wanted to present to the ALJ on May 7, 2020, but did not fax the records to the agency until September 26, 2021, with his written exceptions (Dkt. No. 7-9, at 35, 48).

5

Mr. Lee's final two consultative examinations were performed in 2016 (Dkt. No. 7-7, at 95-115). Still, the Appeals Council did not require a new consultative examination when it remanded the case back to the new ALJ in 2019, following this Court's first judicial review (Dkt. No. 7-10, at 37-40). Likewise, the ALJ was under no duty to order a new consultative examination when the record contains sufficient medical evidence, which supports her decision that Mr. Lee is not disabled pursuant to the Social Security Act.

Specifically, the record reflects and the ALJ's decision considered two consultative examinations regarding Mr. Lee's mental or intellectual capacity (Dkt. Nos. 7-7, at 2-4, 108-115; 7-9, at 23). Mr. Lee objects to Sam Boyd Ph.D.'s latter report drafted in 2016, arguing that the finding of Mr. Lee's full-scale IQ of 90 conflicts with his previous full-scale IQ of 77—which was reported during the 2011 consultative examination (Dkt. No. 9, at 11). Although this Court does not necessarily view Mr. Lee's IQ results as conflicting given the time span and the opportunity for improvement between the exams, the ALJ, in fact, assigned greater weight to the IQ of 77 and the assessment of borderline intellectual functioning (Dkt. No. 7-9, at 23). Mr. Lee also acknowledges this (Dkt. No. 9, at 13). The ALJ adequately discussed her rationale in considering both examinations and the weight she assigned to each, and the ALJ's conclusion is supported by substantial evidence in the record. Thus, Mr. Lee's objection is without merit.

The ALJ also considered another consultative examination report, which was produced by John Wolverton, M.D., in October 2016 (Dkt. No. 7-7, at 98-107; 7-9, at 23-24). That exam included a finding of moderately severe lung restrictions, which improved with bronchodilation (Dkt. No. 7-7, at 100). While balancing that finding with the other medical evidence in the record, the ALJ gave the exam's finding some weight, noting that Mr. Lee's "condition improved with medication" and that she "accounted for this limitation with light work with environmental

restrictions." (Dkt. No. 7-9, at 24). On this basis, Mr. Lee misses the mark when he says that there is no medical evidence of record to support that his physical condition would improve with the help of medication (Dkt. No. 9, at 13).

Additionally, in this case, the ALJ is required to "give controlling weight to a treating physician's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[6] *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (internal quotations omitted). "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Id.* (internal quotations omitted).

Mr. Lee's argument that the ALJ should have given more weight, whether controlling or substantial, to Ornette Gaines M.D.'s treating source opinion is unpersuasive and does not support Mr. Lee's contention that the ALJ failed to develop the record. "An ALJ may reject a treating physician's opinion if it is inconsistent with the record as a whole." *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011). In this instance, the ALJ did not totally disregard Dr. Gaines's opinion but determined it to be unconvincing, stating that it conflicted with his own treatment records and with the other evidence in the record as a whole (Dkt. No. 7-9, at 24). In a letter written for Mr. Lee to obtain food stamps, Dr. Gaines stated that Mr. Lee was unable to work due to chronic illness (Dkt. No. 7-8, at 29). Among other things, Dr. Gaines further opined that Mr. Lee could not sit, stand, or walk in combination for an eight-hour workday; could not perform more than 10 hours of part-time work in a 40-hour workweek; could not maintain regular attendance; could not

---

[6] Because Lee's initial claim was filed before March 27, 2017, it must be evaluated under this standard, which is known as the "treating physician rule." *See* 20 C.F.R. § 404.1527. Mr. Lee's consolidated claim is evaluated in the same manner (Dkt. No. 7-10, at 40).

perform at a consistent pace without breaks; could not set realistic goals; and could not behave in an emotionally stable manner (*Id.*, at 75-80).

Dr. Gaines's medical opinion contradicts his own treatment records from 2017 to 2019.  In the records, Dr. Gaines acknowledges Mr. Lee's physical and mental impairments, but Dr. Gaines routinely notes that Mr. Lee was doing okay; that he was able to function; that he was able to perform activities of daily living; and that medications, with some adjustments, were working successfully (Dkt. Nos. 7-7, at 192; 7-8, at 34, 38, 97, 109; 7-15, at 66).  Therefore, the ALJ's reliance on the state agency medical examinations, the consultative examinations, and other medical evidence in the record from 2008 to 2019 is not misplaced and does nothing to suggest that the record should have been developed further.

Lastly, Mr. Lee has the burden of proving that he is disabled.  *See* 20 C.F.R. § 416.912.  Mr. Lee's assertion that the ALJ should have kept the record open until he submitted additional evidence is wholly unsubstantiated.  During the hearing, which occurred in October 2019, the ALJ indicated that Mr. Lee could submit more evidence, (Dkt. No. 7-9, 100-102), but Mr. Lee offers no reasonable explanation as to why the ALJ should have been obligated to hold the record open indefinitely or until he decided to submit the additional evidence (Dkt. No. 9, at 14).  It appears to the Court as if Mr. Lee received the records that he mentioned at the hearing that he wanted to present to the ALJ on May 7, 2020, but Mr. Lee's counsel did not fax the records to the agency until September 26, 2021, with his written exceptions (Dkt. No. 7-9, at 35, 48).  The ALJ issued her decision in March 2020, five months after the hearing.  Mr. Lee had more than enough time to submit additional evidence before the decision was issued and cannot now blame the ALJ.

##   2.    Subjective Complaints

Next, Mr. Lee alleges that the ALJ did not fully evaluate or discuss his subjective complaints (Dkt. No. 9, at 14–16).  Mr. Lee specifically takes issue with the ALJ noting that he completed his own social security forms; the ALJ improperly considering that no doctor had placed him on functional restrictions, which would exclude light exertional work; the ALJ improperly considering his noncompliance; and the ALJ failing to comply with the *Polaski* factors.  *Id.*

> When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions.

*See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).  "An ALJ need not explicitly discuss each factor," and she may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony."  *Id.* (internal citations omitted).

Given the relevant law and record, the ALJ did not fail to evaluate Mr. Lee's subjective complaints and did not fail to apply the *Polaski* factors.  In fact, the ALJ discussed in depth the nature and extent of Mr. Lee's pain, his medical and treatment history, triggering factors, and Mr. Lee's response to medication and other treatment (Dkt. No. 7-9, at 18-24).  The ALJ considered the objective medical evidence in the record along with Mr. Lee's work history (*Id.*, at 14-25).  The ALJ also properly considered Mr. Lee's failure to take his medication consistently; Mr. Lee's lack of progress in physical therapy; and Mr. Lee's refusal to stop smoking and to receive injections to control the pain (*Id.*, at 22).  *See Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) ("[A] claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion").  Although in no methodical fashion, the ALJ mentioned that she

9

considered the *Polaski* factors (*Id.*, at 776). The ALJ fulfilled her duty with respect to her evaluation of Mr. Lee's subjective complaints.

### 3. RFC

Additionally, Mr. Lee argues that the ALJ's RFC finding was not supported by any of the evidence (Dkt. No. 9, at 17–21). "RFC is defined as 'the most [a claimant] can still do despite' his or her 'physical or mental limitations.'" *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004) (quoting 20 C.F.R. § 404.1545(a)). "The RFC 'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.'" *Id.* (quoting SSR 96–8p). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

To reiterate, the ALJ concluded that Mr. Lee had the RFC to perform light work with the following limitations: (1) he can occasionally use right foot controls; (2) he cannot be exposed to dust, fumes, other pulmonary irritants, extreme heat, or extreme cold; (3) he is limited to unskilled work with supervision that is simple, direct, and concrete; and (4) he can engage in social interaction that is incidental to the work performed but without contact with the general public. (Dkt. No. 7-9, at 17-24). As discussed in detail above regarding the ALJ's duty to develop the record, this Court believes that the ALJ did consider the objective medical records, treatment notes and observations, and Mr. Lee's own complaints in determining the RFC and, thus, "cannot conclude that the ALJ's formulation of [Mr. Lee]'s RFC was error." *McKinney*, 228 F.3d at 863.

### 4. Vocational Expert

Finally, Mr. Lee further alleges that the vocational expert's testimony should not have been considered at step five because the vocational expert did not identify jobs that were consistent with Mr. Lee's reading and math skills, his qualifications are not reflected in the record, and he failed to provide the correct job numbers (Dkt. No. 9, at 17-21). It is well settled "that if substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony." *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) (internal quotations omitted). Here, Mr. Lee has not sufficiently demonstrated that the jobs listed in the DOT as identified by the vocational expert are inconsistent with the RFC finding.

Mr. Lee complains that the vocational expert's qualifications were not in the record; however, when the ALJ asked counsel if she objected to the new vocational expert testifying at the hearing, Mr. Lee's counsel said, "No, Your Honor," and the vocational expert testified that his resume was on file and offered a true description of his professional qualifications (Dkt. No. 7-9, at 97). This Court, therefore, determines Mr. Lee waived any objections to the vocational expert's qualifications and ability to testify.

Moreover, Mr. Lee had the opportunity to cross-examine the vocational expert regarding any discrepancy over the job numbers (*Id.*, at 100). During his examination by the ALJ, the vocational expert informed Mr. Lee that the identified job numbers were published by U.S. Publishing and were DOT specific, unlike that of the previous vocational expert's job numbers (*Id.*). The vocational expert who had testified at Mr. Lee's prior hearing had used the Occupational Employment Quarterly, which does not include DOT codes, to calculate the job numbers. The latter vocational expert corrected that issue. If something was awry, Mr. Lee's counsel had the

opportunity to address the issue during cross examination of the vocation expert but chose not to do so. The unaddressed or unobjected-to issues are considered waived. *Cf. Rahe v. Astrue*, 840 F. Supp. 2d 1119, 1138 (N.D. Iowa 2011) (quoting *Coffin v. Sullivan,* 895 F.2d 1206, 1212 (8th Cir. 1990)) ("[I]f the claimant's attorney fails to object to the post-hearing reports or remains silent when the opportunity to request cross-examination arises, the right to cross-examination is waived."). The ALJ, therefore, did not err at step five when she relied on the vocational expert's testimony and concluded that other jobs exist in the economy that Mr. Lee could perform.

### IV.     Conclusion

There is substantial evidence to support the ALJ's decision to deny benefits. Accordingly, the Court affirms the final determination of the Commissioner that Mr. Lee was not disabled within the meaning of the Social Security Act and dismiss Mr. Lee's complaint with prejudice.

It is so ordered this 29th day of September, 2023.

_____
Kristine G. Baker
United States District Judge